**ORIGINAL**

# In the United States Court of Federal Claims

No. 15-543C
Filed: June 12, 2015

**FILED**
JUN 12 2015
U.S. COURT OF
FEDERAL CLAIMS

* * * * * * * * * * * * * *
MATTHEW LEE BABER,
          Plaintiff,
v.
UNITED STATES,
          Defendant.
* * * * * * * * * * * * * *

Pro Se Plaintiff; In Forma Pauperis Application; Lack of Subject Matter Jurisdiction.

Matthew Lee Baber, Norlina, NC, pro se.

Melissa L. Baker, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for the defendant. With her were Robert E. Kirschman, Jr., Director, and Benjamin C. Mizer, Principal Deputy Assistant Attorney General, Commercial Litigation Branch, Civil Division, Washington, D.C.

## ORDER

**HORN, J.**

### FINDINGS OF FACT

The plaintiff, Matthew Lee Baber, filed a pro se, handwritten complaint in this court on May 27, 2015, and has since filed an application to proceed in forma pauperis. Plaintiff's complaint, in the form of a letter addressed, "Dear, Clerk of Court," apparently seeks review of a decision by the North Carolina Court of Appeals, which found that the trial court did not abuse its discretion when it denied plaintiff's motion for a mistrial on the charge of first-degree murder and arrested the judgment entered on the charge of discharging a firearm into an occupied vehicle. Plaintiff states: "This letter is in concern to my illegal conviction For the above mention case File."[1] As the plaintiff's letter of complaint is very brief and contains few details, much of the findings of fact in this order are taken from the North Carolina Court of Appeals decision, which was included as an exhibit with

---

[1] Capitalization, grammar, and punctuation errors are quoted in this Order as they appear in plaintiff's submissions.

Mr. Baber's complaint. According to the plaintiff, his conviction was based on an allegedly prejudicial statement given by the State's witness, Elliott Simmons. In this court, Mr. Baber claims violations of his rights under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

According to a copy of the April 16, 2013 North Carolina Court of Appeals decision, submitted by Mr. Baber together with his complaint, on the evening of May 8, 2008, Mr. Baber stated, in the presence of Mr. Simmons, Clint Gaines and Amanda Morgan, that he "was going to get [Murdock] back for the way [Murdock] did to him." (alterations in original). Mr. Baber got into Mr. Simmons' pickup truck, bringing his AK-47 assault rifle with him. Mr. Baber spotted Mr. Murdock at a convenience store and had Mr. Simmons follow him along the road back to Mr. Murdock's home. In front of Mr. Murdock's residence, Mr. Baber fired bullets into Mr. Murdock's vehicle, striking Mr. Murdock in his lower back and puncturing his right iliac artery, killing him. After returning to Mr. Gaines and Ms. Morgan, Mr. Baber told Mr. Gaines that he had "got him."

Mr. Baber was indicted for first-degree murder and for discharging a weapon into an occupied vehicle. He was tried by jury in Brunswick County, North Carolina. During the jury trial, the State called Mr. Simmons, who had made a plea bargain with the State. Mr. Simmons admitted that he had initially been untruthful to law enforcement about the incident before deciding to cooperate on the advice of his appointed counsel. Thereafter, Mr. Simmons indicated he had opportunities to speak with law enforcement and was asked during direct examination whether he had ever provided the police with a written statement giving his account of the events of May 8, 2008. Mr. Simmons responded to this question by stating, "I believe I did during a polygraph test."

At his trial in the North Carolina state court, Mr. Baber immediately objected to this statement, and the jury was removed from the courtroom. Mr. Baber moved for a mistrial, claiming that the timing of Mr. Simmons' statement regarding the polygraph test, shortly after the witness had explained his decision to provide truthful information to the police, would give the jury the "mistaken impression" that Mr. Simmons had passed the polygraph (which, according to plaintiff's brief on appeal, also submitted with plaintiff's complaint in this court, Mr. Simmons had failed). Therefore, Mr. Baber claimed, his defense would be prejudiced. Because the results of polygraph tests are inadmissible in North Carolina, the trial court gave the jury a curative instruction to disregard Mr. Simmons' reference to the polygraph testing. The trial court denied Mr. Baber's motion for a mistrial on the grounds that Mr. Simmons' inadvertent reference to the polygraph test did not directly indicate its result. At the close of the State's case, Mr. Baber renewed his motion for a mistrial, which, again, was denied by the trial court. The jury found Mr. Baber guilty of first-degree murder and guilty of discharging a weapon into an occupied vehicle. The trial court entered judgment on both offenses. Mr. Baber was sentenced to life imprisonment, with no possibility of parole.

Mr. Baber appealed the verdict to the North Carolina Court of Appeals, claiming that the trial court abused its discretion when it denied his motion for a mistrial on the murder charge and seeking the arrest of the separate judgment against him for

discharging a weapon into an occupied vehicle. The North Carolina Court of Appeals upheld the trial court's denial of Mr. Baber's motion for a mistrial, but granted Mr. Baber's request to arrest judgment on the charge of discharging a weapon into an occupied vehicle. With regard to the denial of Mr. Baber's motion for a mistrial, the court explained that because Mr. Simmons' inadvertent statement regarding the polygraph was made in the context of testimony in which he admitted lying to police several times during their investigation before deciding to cooperate, it was not at all clear that the jury was left with the inference that Mr. Simmons had in fact passed the polygraph test. Furthermore, the court found that the trial court's curative jury instruction to disregard the single reference to the polygraph test was sufficient to provide the defendant with a "fair and impartial trial." On the charge of discharging a weapon into an occupied vehicle, the appellate court held that this lesser charge was properly merged into Mr. Baber's felony murder conviction, and arrested judgment on the separate sentence imposed for that charge by the trial court, while leaving Mr. Baber's life sentence for felony murder undisturbed.

According to Mr. Baber's letter of complaint in this court:

The Plaintiff Prays that this Honorable Court will agree that Plaintiff 5th, 6th and 14th Am to the U.S. Const. was violated by both trial court and N.C. Court of Appeals once you have examine the attached record.

Please File civil lawsuits against the State of North Carolina For the violation of Trial Court err in bring up past record trial counsel never objected to error, seen AT: TP: 860-862) said record was in violation of JUVENILE CODE 7B-3000(F) as well as violated G.S.8C-1 Rule 404(b) . . .

The plaintiff concludes this letter with the following postscript: "P.S. I Look Forward to hearing From your office on this Explicit legal matter."

The defendant filed a motion to dismiss Mr. Baber's complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims (RCFC) (2014).

## DISCUSSION

The court recognizes that plaintiff is proceeding pro se, without the assistance of counsel. When determining whether a complaint filed by a pro se plaintiff is sufficient to invoke review by a court, pro se plaintiffs are entitled to liberal construction of their pleadings.[2] See Haines v. Kerner, 404 U.S. 519, 520–21 (requiring that allegations contained in a pro se complaint be held to "less stringent standards than formal pleadings drafted by lawyers"), reh'g denied, 405 U.S. 948 (1972); see also Erickson v. Pardus, 551 U.S. 89, 94 (2007); Hughes v. Rowe, 449 U.S. 5, 9–10 (1980); Estelle v. Gamble, 429 U.S. 97, 106 (1976), reh'g denied, 429 U.S. 1066 (1977); Matthews v. United States, 750

---

[2] In his letter of complaint filed with this court, the plaintiff requests, "[w]herefore the Plaintiff prays that his Letter of Complaint be construed AS liberal AS THE LAW ALLOWS."

3

F.3d 1320, 1322 (Fed. Cir. 2014); Diamond v. United States, 115 Fed. Cl. 516, 524, aff'd, 2015 WL 527500 (Fed. Cir. Feb. 10, 2015), cert. denied 135 S. Ct. 1909 (2015). "However, '"[t]here is no duty on the part of the trial court to create a claim which [the plaintiff] has not spelled out in his [or her] pleading."'" Lengen v. United States, 100 Fed. Cl. 317, 328 (2011) (alterations in original) (quoting Scogin v. United States, 33 Fed. Cl. 285, 293 (1995) (quoting Clark v. Nat'l Travelers Life Ins. Co., 518 F.2d 1167, 1169 (6th Cir. 1975))); see also Bussie v. United States, 96 Fed. Cl. 89, 94, aff'd, 443 F. App'x 542 (Fed. Cir. 2011); Minehan v. United States, 75 Fed. Cl. 249, 253 (2007). "While a pro se plaintiff is held to a less stringent standard than that of a plaintiff represented by an attorney, the pro se plaintiff, nevertheless, bears the burden of establishing the Court's jurisdiction by a preponderance of the evidence." Riles v. United States, 93 Fed. Cl. 163, 165 (2010) (citing Hughes v. Rowe, 449 U.S. at 9 and Taylor v. United States, 303 F.3d 1357, 1359 (Fed. Cir.) ("Plaintiff bears the burden of showing jurisdiction by a preponderance of the evidence."), reh'g and reh'g en banc denied (Fed. Cir. 2002)); see also Shelkofsky v. United States, 119 Fed. Cl. 133, 139 (2014) ("[W]hile the court may excuse ambiguities in a pro se plaintiff's complaint, the court 'does not excuse [a complaint's] failures.'" (quoting Henke v. United States, 60 F.3d 795, 799 (Fed. Cir. 1995)); Harris v. United States, 113 Fed. Cl. 290, 292 (2013) ("Although plaintiff's pleadings are held to a less stringent standard, such leniency 'with respect to mere formalities does not relieve the burden to meet jurisdictional requirements.'" (quoting Minehan v. United States, 75 Fed. Cl. at 253).

It is well established that "'subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived.'" Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006) (quoting United States v. Cotton, 535 U.S. 625, 630 (2002)). "[F]ederal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press." Henderson ex rel. Henderson v. Shinseki, 131 S. Ct. 1197, 1202 (2011); see also Gonzalez v. Thaler, 132 S. Ct. 641, 648 (2012) ("When a requirement goes to subject-matter jurisdiction, courts are obligated to consider *sua sponte* issues that the parties have disclaimed or have not presented."); Hertz Corp. v. Friend, 559 U.S. 77, 94 (2010) ("Courts have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it." (citing Arbaugh v. Y & H Corp., 546 U.S. at 514)); Special Devices, Inc. v. OEA, Inc., 269 F.3d 1340, 1342 (Fed. Cir. 2001) ("[A] court has a duty to inquire into its jurisdiction to hear and decide a case." (citing Johannsen v. Pay Less Drug Stores N.W., Inc., 918 F.2d 160, 161 (Fed. Cir. 1990)); View Eng'g, Inc. v. Robotic Vision Sys., Inc., 115 F.3d 962, 963 (Fed. Cir. 1997) ("[C]ourts must always look to their jurisdiction, whether the parties raise the issue or not."). "Objections to a tribunal's jurisdiction can be raised at any time, even by a party that once conceded the tribunal's subject-matter jurisdiction over the controversy." Sebelius v. Auburn Reg'l Med. Ctr., 133 S. Ct. 817, 824 (2013); see also Arbaugh v. Y & H Corp., 546 U.S. at 506 ("The objection that a federal court lacks subject-matter jurisdiction . . . may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment."); Cent. Pines Land Co., L.L.C. v. United States, 697 F.3d 1360, 1364 n.1 (Fed. Cir. 2012) ("An objection to a court's subject matter jurisdiction can be raised by any party or the

court at any stage of litigation, including after trial and the entry of judgment." (citing Arbaugh v. Y & H Corp., 546 U.S. at 506–07)); Rick's Mushroom Serv., Inc. v. United States, 521 F.3d 1338, 1346 (Fed. Cir. 2008) ("[A]ny party may challenge, or the court may raise sua sponte, subject matter jurisdiction at any time." (citing Arbaugh v. Y & H Corp., 546 U.S. at 506; Folden v. United States, 379 F.3d 1344, 1354 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2004), cert. denied, 545 U.S. 1127 (2005); and Fanning, Phillips & Molnar v. West, 160 F.3d 717, 720 (Fed. Cir. 1998))); Pikulin v. United States, 97 Fed. Cl. 71, 76, appeal dismissed, 425 F. App'x 902 (Fed. Cir. 2011). In fact, "[s]ubject matter jurisdiction is an inquiry that this court must raise *sua sponte*, even where . . . neither party has raised this issue." Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings, 370 F.3d 1354, 1369 (Fed. Cir.) (citing Textile Prods., Inc. v. Mead Corp., 134 F.3d 1481, 1485 (Fed. Cir.), reh'g denied and en banc suggestion declined (Fed. Cir.), cert. denied, 525 U.S. 826 (1998)), reh'g and reh'g en banc denied (Fed. Cir. 2004), cert. granted in part sub. nom Lab. Corp. of Am. Holdings v. Metabolite Labs., Inc., 546 U.S. 975 (2005), cert. dismissed as improvidently granted, 548 U.S. 124 (2006); see also Avid Identification Sys., Inc. v. Crystal Import Corp., 603 F.3d 967, 971 (Fed. Cir.) ("This court must always determine for itself whether it has jurisdiction to hear the case before it, even when the parties do not raise or contest the issue."), reh'g and reh'g en banc denied, 614 F.3d 1330 (Fed. Cir. 2010), cert. denied, 131 S. Ct. 909 (2011).

Pursuant to the RCFC and the Federal Rules of Civil Procedure, a plaintiff need only state in the complaint "a short and plain statement of the grounds for the court's jurisdiction," and "a short and plain statement of the claim showing that the pleader is entitled to relief." RCFC 8(a)(1), (2) (2014); Fed. R. Civ. P. 8(a)(1), (2) (2015); see also Ashcroft v. Iqbal, 556 U.S. 662, 677–78 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–57, 570 (2007)). "Determination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." Holley v. United States, 124 F.3d 1462, 1465 (Fed. Cir.) (citing Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1 (1983)), reh'g denied (Fed. Cir. 1997); see also Klamath Tribe Claims Comm. v. United States, 97 Fed. Cl. 203, 208 (2011); Gonzalez-McCaulley Inv. Grp., Inc. v. United States, 93 Fed. Cl. 710, 713 (2010). "Conclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim." Bradley v. Chiron Corp., 136 F.3d 1317, 1322 (Fed. Cir. 1998); see also McZeal v. Sprint Nextel Corp., 501 F.3d 1354, 1363 n.9 (Fed. Cir. 2007) (Dyk, J., concurring in part, dissenting in part) (quoting C. Wright and A. Miller, Federal Practice and Procedure § 1286 (3d ed. 2004)). "A plaintiff's factual allegations must 'raise a right to relief above the speculative level' and cross 'the line from conceivable to plausible.'" Three S Consulting v. United States, 104 Fed. Cl. 510, 523 (2012) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555), aff'd, 562 F. App'x 964 (Fed. Cir.), reh'g denied (Fed. Cir. 2014). As stated in Ashcroft v. Iqbal, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' 550 U.S. at 555. Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Ashcroft v. Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555).

The Tucker Act grants jurisdiction to this court as follows:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1) (2012). As interpreted by the United States Supreme Court, the Tucker Act waives sovereign immunity to allow jurisdiction over claims against the United States (1) founded on an express or implied contract with the United States, (2) seeking a refund from a prior payment made to the government, or (3) based on federal constitutional, statutory, or regulatory law mandating compensation by the federal government for damages sustained. See United States v. Navajo Nation, 556 U.S. 287, 289–90 (2009); United States v. Mitchell, 463 U.S. 206, 216 (1983); see also Greenlee Cnty., Ariz. v. United States, 487 F.3d 871, 875 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2007), cert. denied, 552 U.S. 1142 (2008); Palmer v. United States, 168 F.3d 1310, 1314 (Fed. Cir. 1999).

"Not every claim invoking the Constitution, a federal statute, or a regulation is cognizable under the Tucker Act. The claim must be one for money damages against the United States . . . ." United States v. Mitchell, 463 U.S. at 216; see also United States v. White Mountain Apache Tribe, 537 U.S. 465, 472 (2003); Smith v. United States, 709 F.3d 1114, 1116 (Fed. Cir.), cert. denied, 134 S. Ct. 259 (2013); RadioShack Corp. v. United States, 566 F.3d 1358, 1360 (Fed. Cir. 2009); Rick's Mushroom Serv., Inc. v. United States, 521 F.3d at 1343 ("[P]laintiff must . . . identify a substantive source of law that creates the right to recovery of money damages against the United States."); Golden v. United States, 118 Fed. Cl. 764, 768 (2014). In Ontario Power Generation, Inc. v. United States, the United States Court of Appeals for the Federal Circuit identified three types of monetary claims for which jurisdiction is lodged in the United States Court of Federal Claims. The court wrote:

> The underlying monetary claims are of three types. . . . First, claims alleging the existence of a contract between the plaintiff and the government fall within the Tucker Act's waiver. . . . Second, the Tucker Act's waiver encompasses claims where "the plaintiff has paid money over to the Government, directly or in effect, and seeks return of all or part of that sum." Eastport S.S. [Corp. v. United States, 178 Ct. Cl. 599, 605–06,] 372 F.2d [1002,] 1007-08 [(1967)] (describing illegal exaction claims as claims "in which 'the Government has the citizen's money in its pocket'" (quoting Clapp v. United States, 127 Ct. Cl. 505, 117 F. Supp. 576, 580 (1954)) . . . . Third, the Court of Federal Claims has jurisdiction over those claims where "money has not been paid but the plaintiff asserts that he is nevertheless entitled to a payment from the treasury." Eastport S.S., 372 F.2d at 1007. Claims in this third category, where no payment has been made to the government, either directly or in effect, require that the "particular provision of law relied upon grants the claimant, expressly or by implication, a right to

be paid a certain sum." Id.; see also [United States v. ]Testan, 424 U.S. [392,] 401-02 [1976] ("Where the United States is the defendant and the plaintiff is not suing for money improperly exacted or retained, the basis of the federal claim-whether it be the Constitution, a statute, or a regulation-does not create a cause of action for money damages unless, as the Court of Claims has stated, that basis 'in itself . . . can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.'" (quoting Eastport S.S., 372 F.2d at 1009)). This category is commonly referred to as claims brought under a "money-mandating" statute.

Ontario Power Generation, Inc. v. United States, 369 F.3d 1298, 1301 (Fed. Cir. 2004); see also Twp. of Saddle Brook v. United States, 104 Fed. Cl. 101, 106 (2012).

To prove that a statute or regulation is money-mandating, a plaintiff must demonstrate that an independent source of substantive law relied upon "'can fairly be interpreted as mandating compensation by the Federal Government.'" United States v. Navajo Nation, 556 U.S. at 290 (quoting United States v. Testan, 424 U.S. 392, 400 (1976)); see also United States v. White Mountain Apache Tribe, 537 U.S. at 472; United States v. Mitchell, 463 U.S. at 217; Blueport Co., LLC v. United States, 533 F.3d 1374, 1383 (Fed. Cir. 2008), cert. denied, 555 U.S. 1153 (2009). The source of law granting monetary relief must be distinct from the Tucker Act itself. See United States v. Navajo Nation, 556 U.S. at 290 (The Tucker Act does not create "substantive rights; [it is simply a] jurisdictional provision[] that operate[s] to waive sovereign immunity for claims premised on other sources of law (e.g., statutes or contracts)."). "'If the statute is not money-mandating, the Court of Federal Claims lacks jurisdiction, and the dismissal should be for lack of subject matter jurisdiction.'" Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin., 525 F.3d 1299, 1308 (Fed. Cir. 2008) (quoting Greenlee Cnty., Ariz. v. United States, 487 F.3d at 876); Fisher v. United States, 402 F.3d 1167, 1173 (Fed. Cir. 2005) (The absence of a money-mandating source is "fatal to the court's jurisdiction under the Tucker Act."); Peoples v. United States, 87 Fed. Cl. 553, 565–66 (2009).

The plaintiff has asserted violations of his constitutional rights under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, although Mr. Baber has not alleged specific grounds for these claims in his letter of complaint. Regarding plaintiff's claims for due process under the Fifth and Fourteenth Amendments, the United States Court of Appeals for the Federal Circuit has held that this court does not possess jurisdiction to consider claims arising under the Due Process Clauses of the Fifth and Fourteenth Amendments. See Crocker v. United States, 125 F.3d 1475, 1476 (Fed. Cir. 1997) (citing LeBlanc v. United States, 50 F.3d 1025, 1028 (Fed. Cir. 1995)) (no jurisdiction over a due process violation under the Fifth and Fourteenth Amendments); see also Smith v. United States, 709 F.3d 1114, 1116 (Fed. Cir.) ("The law is well settled that the Due Process clauses of both the Fifth and Fourteenth Amendments do not mandate the payment of money and thus do not provide a cause of action under the Tucker Act." (citing LeBlanc v. United States, 50 F.3d at 1028), cert. denied, 134 S. Ct. 259 (2013)); In re United States, 463 F.3d 1328, 1335 n.5 (Fed. Cir.) ("[B]ecause the Due

Process Clause is not money-mandating, it may not provide the basis for jurisdiction under the Tucker Act."), reh'g and reh'g en banc denied (Fed. Cir. 2006), cert. denied sub nom. Scholl v. United States, 552 U.S. 940 (2007); Acadia Tech., Inc. & Global Win Tech., Ltd. v. United States, 458 F.3d 1327, 1334 (Fed. Cir. 2006); Collins v. United States, 67 F.3d 284, 288 (Fed. Cir.) ("[T]he due process clause does not obligate the government to pay money damages."), reh'g denied (Fed. Cir. 1995); Mullenberg v. United States, 857 F.2d 770, 773 (Fed. Cir. 1988) (finding that the Due Process clauses "do not trigger Tucker Act jurisdiction in the courts"); Murray v. United States, 817 F.2d 1580, 1583 (Fed. Cir. 1987) (noting that the Fifth Amendment Due Process clause does not include language mandating the payment of money damages); Harper v. United States, 104 Fed. Cl. 287, 291 n.5 (2012); Hampel v. United States, 97 Fed. Cl. 235, 238, aff'd, 429 F. App'x 995 (Fed. Cir. 2011), cert. denied, 132 S. Ct. 1105 (2012); McCullough v. United States, 76 Fed. Cl. 1, 4 (2006), appeal dismissed, 236 F. App'x 615 (Fed. Cir.), reh'g denied (Fed. Cir.), cert. denied, 552 U.S. 1050 (2007) ("[N]either the Fifth Amendment Due Process Clause . . . nor the Privileges and Immunities Clause provides a basis for jurisdiction in this court because the Fifth Amendment is not a source that mandates the payment of money to plaintiff."). Due process claims "must be heard in District Court." Kam–Almaz v. United States, 96 Fed. Cl. 84, 89 (2011) (citing Acadia Tech., Inc. & Global Win Tech., Ltd. v. United States, 458 F.3d at 1334), aff'd, 682 F.3d 1364 (Fed. Cir. 2012); see also Hampel v. United States, 97 Fed. Cl. at 238. Therefore, to the extent that plaintiff is attempting to allege Due Process violations, no such cause of action can be brought in this court.

Similarly, insofar as plaintiff's claims allege a violation of his rights under the Sixth Amendment to the United States Constitution, this Amendment is not money-mandating and, therefore, jurisdiction to review these claims does not lie in this court. See Dupre v. United States, 229 Ct. Cl. 706, 706 (1981) ("[T]he fourth and sixth amendments do not in themselves obligate the United States to pay money damages; and, therefore, we have no jurisdiction over such claims."); Turpin v. United States, 119 Fed. Cl. 704, 707 (2015) ("To the extent that Ms. Turpin's complaint brings constitutional challenges under the Due Process Clause and the Sixth Amendment, the Court cannot hear such claims because neither of these constitutional provisions is a money-mandating source."); Gable v. United States, 106 Fed. Cl. 294, 298 (2012) ("[T]he United States Court of Federal Claims does not have jurisdiction to adjudicate the alleged violations of Plaintiff's Sixth Amendment rights, because that constitutional provision is not money-mandating."); Treece v. United States, 96 Fed. Cl. 226, 231 (2010) (citing Milas v. United States, 42 Fed. Cl. 704, 710 (1999) (finding that the Sixth Amendment is not money-mandating)); Smith v. United States, 51 Fed. Cl. 36, 38 (2001) (internal citations omitted) (finding that the Court of Federal Claims lacks jurisdiction over Sixth Amendment ineffective assistance of counsel claims), aff'd, 36 F. App'x 444 (Fed. Cir.), reh'g denied (Fed. Cir.), cert. denied, 537 U.S. 1010 (2002).

Moreover, although the plaintiff's complaint is difficult to follow and contains few details, it appears that all of plaintiff's claims are made against the courts of the State of North Carolina. Indeed, plaintiff's complaint begins: "Re: N.C. Court of appeals No. COA12-1121 From Brunswick County File No (S) 08-crs52858 10-crs-3751[.]" The United

States Supreme Court has indicated that for suits filed in the United States Court of Federal Claims and its predecessors, "[i]f the relief sought is against others than the United States the suit as to them must be ignored as beyond the jurisdiction of the court." United States v. Sherwood, 312 U.S. 584, 588 (1941) (citation omitted). Stated differently, "the only proper defendant for any matter before this court is the United States, not its officers, nor any other individual." Stephenson v. United States, 58 Fed. Cl. 186, 190 (2003) (emphasis in original); see also United States v. Sherwood, 312 U.S. at 588. As none of plaintiff's claims are made against the United States, this court lacks jurisdiction over his complaint. The court does not have jurisdiction over plaintiff's grievances against the State of North Carolina or its public institutions. See Souders v. S.C. Pub. Serv. Auth., 497 F.3d 1303, 1308 (Fed. Cir. 2007); Reid v. United States, 95 Fed. Cl. 243, 248 (2010) ("The Court of Federal Claims does not have jurisdiction to hear plaintiff's claims naming states, localities, state government agencies, local government agencies and private individuals and entities as defendants."); Woodson v. United States, 89 Fed. Cl. 640, 649 (2009) (citing Shalhoub v. United States, 75 Fed. Cl. 584, 585 (2007)). Only the United States Supreme Court may review the decisions of state courts, and the Supreme Court may only do so after a state's highest court has rendered a final decision. See 28 U.S.C. § 1257 (2012) ("Final judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari . . . ."); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 482 (1983); Rooker v. Fid. Trust Co., 263 U.S. 413, 416 (1923); see also Mora v. United States, 118 Fed. Cl. 713, 716 (2014) ("[T]his court does not have jurisdiction to review the decisions of state courts, federal bankruptcy courts, federal district courts, or federal circuit courts of appeals."); Jiron v. United States, 118 Fed. Cl. 190, 200 (2014) (citing Johnson v. Way Cool Mfg., L.L.C., 20 F. App'x 895, 897 (Fed. Cir. 2001)). Thus, this court lacks jurisdiction over plaintiff's claims.

Furthermore, the limited jurisdiction of this court does not include the power to review criminal convictions. See Joshua v. United States, 17 F.3d 378, 379 (Fed. Cir. 1994); Lott v. United States, 11 Cl. Ct. 852, 852-53 (1987); see also Cooper v. United States, 104 Fed. Cl. 306, 312 (2012) While this court may adjudicate claims for damages arising from unjust convictions overturned by other courts, as provided by 28 U.S.C. § 1495, Mr. Baber cannot bring such a claim, because no court has yet reversed or set aside his felony-murder conviction, nor has he attached a pardon or certificate of innocence, as is required to sustain a claim under § 1495. See 28 U.S.C. §2513 (2012); Abu-Shawish v. United States, No. 14–947C, 2015 WL 2195187, at *1-2 (Fed. Cl. May 8, 2015); Humphrey v. United States, 52 Fed. Cl. 593, 596 (2002), aff'd, 60 F. App'x 292 (Fed. Cir. 2003).

The court notes that this plaintiff, previously, has filed a number of suits in federal district and appellate courts alleging violations of his constitutional rights arising from his incarceration, all of which have been dismissed or have otherwise lapsed. See, e.g., Order, In re Baber, No. 13-1917, at 1 (4th Cir. Sept. 10, 2013) (dismissing for failure to prosecute); Order, Baber v. Daniels, No. 5:13-HC-2135-BO, at 1 (E.D.N.C. Nov. 6, 2013) (dismissing for failure to pay the filing fee or complete an application to proceed in forma pauperis); Order, Baber v. Brunswick Cnty. Det. Ctr., No. 5:11-CT-3213-FL, at 1

(E.D.N.C. Sept. 17, 2012) (dismissing for failure to timely amend the complaint); Order, Baber v. Brunswick Cnty. Jail, No. 5:11-MC-67, at 1 (E.D.N.C. Oct. 6, 2011) (returning plaintiff's complaint, which was never amended and resubmitted, for failure to comply with local procedural rules).

    Initially, plaintiff did not pay the filing fee or file an application to proceed in forma pauperis when he submitted his complaint. After a copy of the application was mailed to him by the Clerk's Office, plaintiff subsequently did submit an application to proceed in forma pauperis on June 9, 2015, asserting that he is unable to pay the required filing fees, and requesting waiver of court costs and fees. His application indicates that he is presently incarcerated, and, as is required by 28 U.S.C. § 1915(a)(2) (2012), Mr. Baber has included a trust fund account statement covering the six-month period prior to the filing of his complaint along with his application. Mr. Baber, however, indicates that he is presently employed and paid $46.08 per month, "but not always the same every month." Mr. Baber also indicates he receives "$70.00 a month from my aunt. And sometimes from a women friend."

    In order to provide access to this court to those who cannot pay the filing fees mandated by RCFC 77.1(c) (2014), the statute at 28 U.S.C. § 1915 permits a court to allow plaintiffs to file a complaint without payment of fees or security under certain circumstances. The standard in 28 U.S.C. § 1915(a)(1) for in forma pauperis eligibility is "unable to pay such fees or give security therefor." Determination of what constitutes "unable to pay" or unable to "give security therefor," and, therefore, whether to allow a plaintiff to proceed in forma pauperis is left to the discretion of the presiding judge, based on the information submitted by the plaintiff or plaintiffs. See, e.g., Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council, 506 U.S. 194, 217–18 (1993); Fuentes v. United States, 100 Fed. Cl. 85, 92 (2011). In Fiebelkorn v. United States, the United States Court of Federal Claims indicated:

> [T]he threshold for a motion to proceed in forma pauperis is not high: The statute requires that the applicant be "unable to pay such fees." 28 U.S.C. § 1915(a)(1). To be "unable to pay such fees" means that paying such fees would constitute a serious hardship on the plaintiff, not that such payment would render plaintiff destitute.

Fiebelkorn v. United States, 77 Fed. Cl. 59, 62 (2007); see also Hayes v. United States, 71 Fed. Cl. 366, 369 (2006). Although Mr. Baber's income level may qualify him for in forma pauperis status, as discussed above, his complaint is being dismissed for lack of jurisdiction.

## CONCLUSION

For the foregoing reasons, plaintiff's complaint is **DISMISSED**. The Clerk of the Court shall enter **JUDGMENT** consistent with this Order.

**IT IS SO ORDERED.**

*[signature]*

**MARIAN BLANK HORN**
**Judge**